UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MERITAGE HOMES OF GEORGIA,
INC.,
                Plaintiff,

        v.

GRANGE INSURANCE COMPANY
a/k/a Grange Mutual Casualty
Company,
                Defendant.

CIVIL ACTION NO.

1:19-CV-5717-SCJ

## **O R D E R**

This is an action for monetary damages as well as declaratory relief as to an insurer's obligations to a general contractor who is named as an additional insured on a policy held by subcontractor. It comes before the Court on Plaintiff Meritage Homes of Georgia, Inc.'s ("Meritage") Motion for Summary Judgment as to its claims for declaratory relief and for breach of contract (Doc. No. [22]) and Grange Insurance Company's ("Grange") Motion for Summary Judgment as to Meritage's claims for declaratory relief and for breach of contract as well as for bad faith penalties (Doc. No. [21]).

## I.    **Background**

Meritage is a national home builder and the developer of a community located in Gainesville, Georgia, known as Hillside at Riverstone (the

"Development"). Pl.'s Stmt. of Material Facts ("PSOMF") ¶1 (Doc. No. [22-6]).[1] In 2014, Meritage entered into a Master Subcontract Agreement (the "Agreement") with Chris Easterwood Excavating, Inc. ("Easterwood"), pursuant to which Easterwood agreed to perform excavation and grading work at properties within the Development. PSOMF ¶2; Def.'s Stmt. of Material Facts ("DSMOF") ¶1 (Doc. No. [21-1]). The Agreement required Easterwood to designate Meritage as an "Additional Insured" under its commercial general liability insurance policy. PSOMF ¶3; DSOMF ¶2.

Grange issued to Easterwood Policy Number CPP 2029920, providing general liability coverage with an effective policy period between May 30, 2016 through May 30, 2018 ("Policy"). PSOMF ¶4; DSOMF ¶3. Meritage is named as an Additional Insured under the Policy by express endorsements, including CG 20 37, "Additional Insured – Owners, Lessees or Contractors – Completed Operations." PSOMF ¶5; DSOMF ¶4. The Policy requires Grange to "pay those sums that the insured

---

[1] Citations that reference only one parties' Statements of Material Facts refer to statements that are not disputed. Pursuant to the Local Rules of this Court, each of the proponent's facts will be deemed admitted unless the respondent "(i) directly refutes the [proponent's] fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the [proponent's] fact; or (iii) points out that the [proponent's] citation does not support the [proponent's] fact or that the [proponent's] fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B(1)." LR 56.1B(2), (3), NDGa. Where a factual assertion or portion thereof is properly disputed, the Court will cite directly to evidence from the record that supports the Court's factual recitation.

becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies." PSOMF ¶6.

The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." PSOMF ¶7. The Policy provides a standard definition of "property damage" to include:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

PSOMF ¶8; DSOMF ¶13 . The Policy provides for the following exclusion under Section I – Coverages:

> 1. Exclusions
> This insurance does not apply to:
>> j. Damage to Property
>> "Property Damage" to:
>>> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.

DSOMF ¶14. The Policy provides for the additional exclusion under Section I – Coverages:

> l. Damage to Your Work
> "Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

DSOMF ¶15. The Policy also includes, in relevant part, the following definition:

SECTION V - DEFINITIONS
22. "Your work":
    a. Means:
        (1) Work or operations performed by you or on your behalf; and
        (2) Materials, parts or equipment furnished in connection with such work or operations.
    b. Includes:
        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
        (2) The providing of or failing to provide warnings or instructions.

DSOMF ¶16.

Meritage entered into a contract with Robert Filipovich and Michelle Filipovich ("Claimants") providing for the construction of a new home at 8340 Post Oak Lane, Gainesville, Georgia 30506 ("Filipovich Project"). DSOMF ¶5. Pursuant to the Agreement, Meritage subcontracted out the work relating to the excavation and grading for the Filipovich Project to Easterwood. DSOMF ¶7. After completion of the Filipovich Project, Meritage was made aware that the Filipovich Project was allegedly experiencing severe flooding after rain events purportedly due to defects in the grading, site preparation, and excavation ("Alleged Defects") performed as part of the Filipovich Project DSOMF ¶8.

In October 2018, Claimants filed an arbitration against Meritage seeking to recover damages associated with the repair of and damages to the Filipovich Project arising from the Alleged Defects ("Underlying Litigation"). PSOMF ¶10; DSOFM ¶9. Claimants alleged that Meritage improperly excavated and graded their lot in

the Development, causing water to collect and pool in their yard. PSOMF ¶11.

Specifically, Claimants alleged as follows:

> Your failures to perform (failures to meet the standard of care owed to my clients) include, without limitation: deficient site preparation and grading—you failed to abide by the applicable grading plan; you removed massive amounts of soil and dirt from the Property, rendering a well lying, premium lot, substandard; you attempted to add fill dirt to address your errors, failing to build up the filled areas and compact same as you went; you then failed to install drainage systems to facilitate removal of the standing water in the depressions you created.

PSOMF ¶12. Claimants alleged that the remediation plan proposed by Meritage would further compromise the septic systems,[2] result in pooling areas with drains to be maintained, look unsightly, and fail to address the fundamental defective grading, site preparation, and over excavation." Ex. 3 to Fichter Dec. at 1 (Doc. No. [22-2] at 44). Claimants further alleged that the standing water and the additional issues created by the defective grading ruined the landscaping at the property, including sod, trees, and other plants. PSOMF ¶14. Claimants alleged that as a result of negligent construction, they suffered the loss of use and enjoyment of their home and appurtenances at the property. Ex. 3 to Fichter Dec. at 9 (Doc. No. [22-2] at 46). Claimants sought damages arising from Meritage's failure to perform properly the "grading, site preparation, excavation, [and] soil compaction . . ." at the subject property. PSOMF ¶16.

---

[2] In addition to the issues raised regarding the excavation and grading, Claimants asserted claims related to the installation of the septic systems. Ex. 3 to Fichter Dec. at 7 (Doc. No. [22-2] at 44 n.1).

Easterwood, Grange's insured, conducted all of the grading work at the subject property, including site preparation, excavation, and soil compaction. PSOMF ¶17. Meritage denied all liability and looked to Easterwood and Grange for defense and indemnification. PSOMF ¶18.

Meritage tendered the claims to Grange and provided it a copy of the Demand for Arbitration. PSOMF ¶19. Meritage notified Grange that a final hearing in the Underlying Litigation had been scheduled. PSOMF ¶20. Grange issued its coverage position on May 8, 2019, denying Meritage both a defense to the Underlying Litigation and indemnity for the claims, stating:

> For there to be coverage under the Grange policy, there must be a tort accident "occurrence" ("i.e. "Accident" within the coverage territory and during the coverage period") which causes either "bodily injury" or "property damage" and which is not otherwise excluded. The allegations in the Demand for Arbitration are that there is flooding due to defective grading, site preparation, over excavation and improper installation of the septic system. There are no indication [sic] of an occurrence which resulted in property damages as a result of that occurrence.

> Since there is no duty to defend an insured or indemnitee(s) against a suit seeking damages to which the insurance does not apply, we will not be accepting your tender and will not be defending or indemnifying you in this matter.

PSOMF ¶21.

Meritage responded to Grange's coverage letter in June 2019 and reiterated its demand for coverage. PSOMF ¶23. Grange did not communicate with Meritage again for several months and never discussed or altered its coverage position. PSOMF ¶24.

The Arbitrator conducted a hearing in the Underlying Litigation. PSOMF ¶25. Claimants presented the expert testimony of Jason Davis, who testified that the lot was not graded in accordance with the lot grading plan, which prevented the lot from draining properly. Mr. Davis also testified that the lot was "over" excavated. PSOMF ¶26. Meritage's expert, Reed Parker, testified that "[t]he cause of the ponding and pooling at the [subject] Lot is the overgrading and excavation of the Lot, i.e. the digging of a depression six feet (6') lower than the county approved [lot grading permit] allowed." PSOMF ¶27. Claimants presented evidence regarding the estimated costs to correct the drainage issues at the property, including engineering costs and installation of new drainage facilities. PSOMF ¶28. Claimants also presented evidence of costs incurred to repair the damaged landscaping and septic systems. PSOMF ¶29. The arbitrator found that the lot grading permit contemplated that water would drain from the rear of the lot to the street at the front of the lot, but the "grading, as actually performed by the contractor resulted in most of the drainage of water . . . flowing to the back property line [where it] could not drain out." PSOMF ¶30. The arbitrator concluded: "The ponding/pooling of water on Claimants' lot was caused by [Meritage's] contractor's improper grading of the lot, overgrading and excavating the lot contrary to the [lot grading permit.]" PSOMF ¶31. The Arbitrator entered a Final Award in the amount of $129,530.93 against Meritage and in favor of Claimants in the Underlying Litigation. PSOMF ¶32. The Final Award states, in pertinent part, as follows:

> The ponding/pooling of water on Claimants' lot was caused by [Meritage's] contractor's improper grading of the lot, overgrading and excavating the lot contrary to the [lot grading plan].

PSOMF ¶33.

Meritage provided a copy of the Final Award to Grange and reiterated its demand for coverage. PSOMF ¶34. Grange did not respond to the Final Award and has never reimbursed Meritage for the costs incurred in the defense of the Underlying Action or the loss sustained by the Final Award. PSOMF ¶35. Meritage incurred costs and expenses, including attorneys' fees, in the amount of $109,326.49 in connection with its defense of the Underlying Litigation and satisfied the Final Award in full. Fichter Dec. at ¶ 15 (Doc. No. [22-2] at 3); Oliver Dec. at ¶ 24 (Doc. No. [25-1] at 8).

There is no dispute that the coverage provided to Meritage, as an Additional Insured, extends to "property damage" caused by Easterwood's completed work for Meritage at the subject property. PSOMF ¶9. It is further undisputed that as an Additional Insured presenting a first-party claim to Grange, Meritage is bound by all of the terms and conditions of the Policy. DSOMF ¶18.

Meritage filed this civil action asserting the following substantive claims: Count I Declaratory Judgment (that Grange had duty to defend and indemnify it with respect to the Underlying Litigation); Count II Breach of Contract (duties to defend and indemnify with respect to the Underlying Litigation); Count III Bad Faith Breach of Insurance Contract; and Count IV Breach of Duty of Good Faith

and Fair Dealing. Additionally, Meritage asserted claims for the following types of specific relief: Count V Exemplary Damages and Count VI Attorney Fees.

## II.   Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgement if the movant shows that there is no genuine dispute as to any material act and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden can be discharged either by showing an absence of evidence to support an essential element of the nonmoving party's case or by showing that the nonmoving party will be unable to prove their case at trial. *Celotex*, 477 U.S. at 325; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). In determining whether the moving party has met this burden, the Court must

consider the facts in the light most favorable to the nonmoving party. *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id*. All reasonable doubts, however, are resolved in the favor of the nonmoving party. *Fitzpatrick*, 2 F.3d at 1115. In addition, the Court must "avoid weighing conflicting evidence or making credibility determinations." *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

## III.   Discussion

Meritage moves for summary judgment on its claim for declaratory relief as to Grange's duty to defend and duty to indemnify it and on its claim for breach of contract, which is also based on the duties to defend and indemnify (Doc. No. [22]). Grange moves for summary judgment as to Meritage's claims for declaratory relief and breach of contract as well as for bad faith penalties (Doc. No. [21]).

As a general matter, if there is no duty to defend, there is no duty to indemnify. *Auto-Owners Ins. Co. v. Unit Owners Ass'n of Riverview Overlook Condo., Inc.*, No. 1:13-CV-3012-TWT, 2014 WL 5465286, at *2 (N.D. Ga. Oct. 28, 2014) (citing *Shafe v. American States Ins. Co.*, 288 Ga. App. 315, 317, 653 S.E.2d

10

870 (2007) ("[A]n insurer's duty to defend is broader than its duty to indemnify.")); *Allstate Ins. Co. v. Harkleroad*, No. 409CV011, 2010 WL 2076941, at *3 (S.D.Ga. May 24, 2010) ("However, if it is found that Allstate does not have a duty to defend on a claim, it will likewise not be required to indemnify the insureds if they are ultimately held liable for that claim.")). Therefore, this Court will first address whether Grange had a duty to defend Meritage in the Underlying Litigation.

**A. Duty to Defend**

"In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 614, 299 S.E.2d 561, 563 (1983). "Whether an insurer is obligated to defend an action against its insured is determined by the contract." *Yeomans & Assocs. Agency, Inc. v. Bowen Tree Surgeons. Inc.*, 274 Ga. App. 738, 741, 618 S.E.2d 673, 677 (2005) (internal quotations omitted). "[T]he issue is not whether the insured is actually liable to the plaintiffs; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend." *Id.* at 742, 618 S.E.2d at 677 (internal quotations omitted) (emphasis in original). "To determine whether an insurer owe[d] its insured a duty to defend a particular lawsuit, Georgia law directs [the Court] to compare the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract." *Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998).

Therefore, the question presented here is whether Claimants' allegations and the underlying facts supporting those allegations fell within the provisions of the Policy. Specifically, the Court must determine is whether there were allegations of "property damage" caused by an "occurrence" that were not expressly excluded.

### 1. Occurrence

According to the Policy, "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." PSOMF ¶7. Meritage argues that an "occurrence" can arise where faulty workmanship causes unforeseen or unexpected damages. *See Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 752, 707 S.E.2d 369, 372 (2011). In response, Grange concedes that Georgia courts have recognized that faulty workmanship may, at times, constitute an occurrence. Therefore, Grange contends that whether the improper grading and excavation work by Easterbrook amount to an "occurrence" under the policy is not dispositive here. Rather, according to Grange, the dispositive issues for this Court's determination are whether Meritage's claims constitute "property damage" under the Grange policy and, if so, whether Meritage's claims fall within express exclusions under the Grange policy.

### 2. Property Damage[3]

---

[3] Meritage argues that Grange waived its ability to challenge whether there was "property damage" because its coverage letter does not clearly identify this as a defense to coverage. Pl.'s M. for Summ. J. at 16 n.6 (Doc. No. [22-1]).  However, the

In this case, the Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured" PSOMF ¶8; DSOMF ¶13. It is well settled in Georgia that the "property damage" requirement in policies such as the one at issue here "limit[s] coverage in faulty workmanship cases to instances in which the faulty workmanship has damaged other, non-defective property or work"; that is, "damage beyond mere faulty workmanship" on the work the insured was hired to perform. *Cowart v. Nautilus Ins. Co.*, No. 4:17-cv-142, 2019 WL 254662, at *6 (S.D. Ga. Jan. 17, 2019) (quoting *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 293 Ga. 456, 746 S.E.2d 587, 591 (2013)). When a contractor must repair or replace an element of his own work damaged by his own faulty workmanship, the standard commercial general liability policy is not intended to provide protection. *Mass. Bay Ins. Co. v. Sunbelt Directional Drilling, Inc.*, No. 1:07-cv-408-JOF, 2008 WL 8167708, at *3 (N.D. Ga. Feb. 14, 2008). A claim for the costs of repairing or removing defective work is not a claim for property damage. *Cowart*, 2019 WL 254662, at *6.

---

language of the coverage letter by Grange states, "The allegations in the Demand for Arbitration are that there is flooding due to defective grading, site preparation, over excavation and improper installation of the septic system. There are no indication [sic] of an occurrence which resulted in <u>property damages</u> as a result of that occurrence." PSOMF ¶ 21 (emphasis added). While Grange does not articulate its reasoning on the absence of "property damage," its assertion that there was no occurrence resulting in property damage is enough for this Court to reject Meritage's waiver argument as it applies to "property damage."

Here, the parties agree that Claimants alleged that the defective grading ruined the landscaping at the property, including sod, trees, and other plants. PSOMF ¶ 14. Additionally, it is undisputed that Claimants alleged that they suffered the loss of use and enjoyment of their home and appurtenances at the property. Ex. 3 to Fichter Dec. at 9 (Doc. No. [22-2] at 46). Therefore, there was a claim for property damage beyond the defective work done by Easterbrook. Grange limits its focus to the damages awarded Claimants in the arbitration, arguing that the damages against Meritage were for the cost to the repair the Alleged Defects i.e., the grading and excavation issues. But there is an important distinction between what was claimed and what was awarded in terms of the duty to defend. *See Penn–Am. Ins. Co. v. Disabled Am. Veterans*, 224 Ga. App. 557, 481 S.E.2d 850, 852 (1997), *aff'd* 268 Ga. 564, 490 S.E.2d 374 (1997) ("an insurer's duty to pay and its duty to defend are separate and independent obligations"). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407-08, 730 S.E.2d 413, 418 (2012) (internal citations omitted). "Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured." *Penn–Am. Ins. Co.*, 268 Ga. 564, 565, 490 S.E.2d 374, 376 (1997) (citations omitted). Therefore, Grange cannot prevail on its argument that there was no property damage beyond the defective work.

14

In the alternative, Grange argues that even if Claimants' allegations fell within the Policy's definition of "property damage," other applicable provisions within the Policy exclude coverage. Specifically, Grange points to the Policy's exclusion of "Property Damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations." Ex. C to Pl.'s Resp. to M. Summ. J. (Doc. No. [30-3] at 43). Also, Grange relies on the Policy's exclusion of "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" *Id.* "Your Work" is defined by the Policy as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." *Id.* at 54. These types of exclusions are known as "business risk exclusions." *Taylor Morrison Svcs. Inc. v. HDI-Gerling America Ins. Co.,* 293 Ga 456, 461-62, 746 S.E.2d 587, 592 (2013).

Grange contends that all Claimants' allegations fall within the business risk exclusions because as the general contractor, Meritage was responsible for the entire project, and it is Meritage's scope of work that is to be considered in determining whether there are allegations of property damage beyond faulty workmanship, not Easterbrook's scope of work. In other words, Grange urges the Court to look to the Filipovich Project as a whole rather than Easterbrook's work,

which was limited to grading, site preparation, and excavation of the construction lot.

In support of its position, Grange relies on the Georgia Court of Appeals ruling in *Auto Owners Ins. Co v. Gay Const. Co.*, 332 Ga. App. 757, 774 S.E.2d 798 (2015), a case in which a general contractor was hired to reconstruct a swimming pool and associated buildings for the Piedmont Park Conservancy. As part of the project, the general contractor subcontracted the installation of a waterproofing membrane. *Id.* The subcontractor was covered by a commercial general liability policy issued by Auto Owners which named the general contractor as an additional insured. *Id.* at 758. After being notified by Piedmont Park Conservancy of a water leak due to the improper application of the waterproofing membrane, the general contractor instituted a first-party claim against Auto Owners seeking to recover damages from the costs of repairing the subcontractor's allegedly defective work. *Id.* at 759.

In determining whether the business risk exclusions contained in the Auto Owners policy applied to the additional insured general contractor's claims, the Georgia Court of Appeals considered whether the Auto Owners policy would have covered defective workmanship performed by the named insured subcontractor. *Id.* at 760-61. Finding that it did not provide such coverage, that court concluded that, because the additional insured general contractor was responsible for all work done within the scope of its contract with the Piedmont Park Conservancy, the business

16

risk exclusions of the Auto Owners policy also excluded coverage for the additional insured general contractor's first-party claim for damages caused by the subcontractor's faulty workmanship. *Id.* at 762.

Importantly, the Georgia Court of Appeals, in *Gay Construction*, recognized that business risk exclusions are designed to exclude coverage for defective workmanship by the insured builder causing damage to the construction project itself but not for a negligent act causing damage "above and beyond the original contractual obligations or other property." *Id.* at 760-61. Therefore, according to Grange, all damage alleged by Claimants is excluded from coverage because it was alleged damage to property within the scope of work of Meritage, the general contractor, who was in charge of the entire Filipovich Project.

In opposition to Grange's argument, Meritage contends that application of the exclusion at issue here is limited to the scope of work performed by Easterbrook, not the entire Filipovich Project for which Meritage, as general contractor, was responsible. In support of its position, Meritage relies on *Pulte Home Corp. v. TIG Insurance Co.*, 794 F. App'x 587, 590 (9th Cir. 2019) in which the Ninth Circuit, applying Georgia law, found that the distinction between the "additional insured" and the "named insured" was critical in terms of which contractor's scope of work is considered in determining whether there is damage to property beyond that which is part of the actual work performed by the contractor.

In this case, the Policy expressly explains that "you" and "your" refer to the

"Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." Ex. C to Pl.'s Resp. to M. Summ. J. (Doc. No. [30-3] at 39). The Named Insured shown in the Declarations is Chris Easterwood Excavating Inc. *Id.* at 3. With respect to Meritage, the policy endorsement shows that it is an additional insured:

> but only with respect to liability for "bodily injury", "property damage" or "personal or advertising injury" caused, in whole or in part, by: 1. Your acts or omissions; or 2. The acts or omission of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

Ex. C to Def.'s M. Summ. J. (Doc. No. [21-6] at 1).

There is nothing in the Policy to suggest that Meritage qualified as a Named Insured. This is the same distinction as to *Gay Construction* recognized by the Ninth Circuit in *Pulte Home Corp.*, 794 F. App'x. at 589-90.[4] While the Court

---

[4] Moreover, the interpretation urged by Grange here would not make sense. The Endorsement provides that Meritage is an Additional Insured "with respect to liability for 'bodily injury', 'property damage' or 'personal or advertising injury' caused, in whole or in part, by: 1. **Your** acts or omissions; or 2. The acts or omission of those acting on **your** behalf; in the performance of **your** ongoing operations for the additional insured(s) at the location(s) designated above." Ex. C to Def.'s M. Summ. J. (Doc. No. [21-6] at 1) (emphasis added). If "your" is referring to Meritage—as Grange argues—the second provision would be incomprehensible. *See S.-Owners Ins. Co. v. Wiggins*, No. 310-CV-390-J-37MCR, 2012 WL 405322, at *5 (M.D. Fla. Feb. 9, 2012). In other words, if the policy intends these instances of "you" and "your" to be the Additional Insured—as opposed to the Named Insured as is provided in the Policy itself—the second clause of section 2 would somehow contemplate that the additional insured is working for itself. This cannot be. Thus, the court concludes that even in the Endorsement "you" and "your" refers to Easterbrook, the Named Insured.

recognizes that it is not bound by the Ninth Circuit's decision, it finds the reasoning persuasive here.

Grange contends that Meritage is seeking coverage beyond that which would have been afforded to the Named Insured. While Grange is correct that the Policy would not afford coverage for Easterbrook's faulty workmanship if Easterbrook sought coverage under the Policy, it overlooks the fact that there would have been coverage for claims raised by Easterbrook for damage to property other than the defective grading and excavating. It is that coverage to which the Additional Insured is entitled, nothing more.

Because Claimants alleged damage to property beyond that which was in Easterbrook's scope of work, it is at least arguable that the claims within the Underlying Litigation fell within the main policy coverage. Accordingly, Grange had a duty to defend Meritage in the Arbitration.[5] As such, Meritage is entitled to summary judgment as to its duty to defend claim, and Grange's motion for summary judgment on this issue is due to be denied.

It is undisputed that Meritage paid $109,326.49 for costs and expenses in connection with its defense of the Underlying Litigation. Fichter Dec. at ¶ 15 (Doc.

---

[5] The duty to defend applies to the entire Arbitration even if some of the allegations ultimately are not found to be covered by the policy. *See Travelers Property Cas. Co. of America v. Kansas City Landsmen, L.L.C.*, 592 F. App'x 876, 882 (11th Cir. 2015) (quotations omitted) (emphasis added); *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012) (under Georgia law, an insurer has a duty to defend the entire action if any of the claims might be within coverage).

No. [22-2] at 3); Oliver Dec. at ¶ 24 (Doc. No. [25-1] at 8). Therefore, Meritage is entitled to damages in this same amount for that portion of Count II of the complaint pertaining to Grange's breach of its duty to defend.

### B. Duty to Indemnify

The duty to indemnify depends on whether the insured "becomes legally obligated to pay [sums] as damages because of 'bodily injury' or 'property damage.' " *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 591 S.E.2d 430, 434 (2003). Therefore, to prevail on its motion for summary judgment as to the duty to indemnify, Meritage must establish that it suffered a loss because of an occurrence that caused property damage as defined by the Policy.

On July 8, 2019, the arbitrator entered a Final Award in which Claimants prevailed on their claim for negligent construction and were awarded a total of $75,922.05.[6] Ex. A to Pl.'s M. Summ. J. (Doc. No. [22-2] at 67). Additionally, the Claimants were awarded all expenses of arbitration including Arbitrator fees and attorney's fees in the amount of $53,608.88. Meritage contends that its legal obligation to pay the award is based on (1) an "occurrence" under the Policy, and (2) "property damage" under the Policy. In response, Grange argues that the claims raised in the Underlying Litigation do not constitute "property damage" as defined

---

[6] This sum consisted of the following: $58,351.00 for costs of construction work, $12,434.26 for costs of professional engineering expenses, $1,759.06 for the cost of replacing shrubs and other greenery, and $3,377.73 for costs incurred in connection with septic tank problems and repairs. Ex. A to Pl.'s M. Summ. J. (Doc. No. [22-2] at 67).

by the Policy, and alternatively such claims are excluded by the business risk exclusions.

First, Grange relies on the same arguments related to the definition of "property damage" and to the business risk exclusions that this Court addressed and rejected above. *See supra* Section III.A.2. The Court will not repeat that analysis here except to point out that at least some portion of the Final Award was for damage to property other than that which fell within Easterbrook's scope of work. This conclusion results in a finding of a duty to indemnify as to at least some of the damages awarded against Meritage.

Second, Grange argues that the Final Award found that Meritage breached its contract with Claimants and that the resulting damages for breach of contract are the same as the damages for the claim for negligent construction. While not fully explained by Grange, the Court presumes its focus on the Final Award's reference to breach of contract is because the Policy does not provide coverage for a breach of contract. *See Maxum Indem. Co. v. Jimenez*, 318 Ga. App. 669, 672, 734 S.E.2d 499, 503 (2012). However, the Final Award is clear in stating that Easterbrook breached the industry standard, which resulted in damages. Final Award (Doc. No. [22-2] at 69-70). That the arbitrator recognizes that the damages resulting from the negligence are the same as for a breach of the contract between Claimants and Meritage does not erase a finding of negligence. Rather, the Court presumes that the arbitrator pointed out the overlap in damages because Claimants

cannot receive a double recovery even though they could prevail on two distinct causes of action.

Third, Grange argues that the damages awarded to Claimants are for nothing more than the Alleged Defects, which are not covered by the Policy. In response, Meritage argues that portions of the Final Award were allocated to work other than the grading. A review of the Final Award reveals that there are items beyond repair to the grading included, i.e., the cost of replacing shrubs and other greenery, and the costs incurred in connection with septic tank problems and repairs. Ex. A to Pl.'s M. Summ. J. (Doc. No. [22-2] at 67). Therefore, Grange's generalized interpretation of the Final Award is simply incorrect.

Because Meritage became legally obligated for property damage caused by Easterbrook, the Policy requires Grange to indemnify Meritage as to its loss. Accordingly, Meritage is entitled to summary judgment on this issue, and Grange's Motion for Summary Judgment as to the duty to indemnify is due to be denied.

There remains the question of the amount of the indemnification. Meritage seeks indemnification for the full amount of the Final Award. However, the Policy excludes coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" Ex. B. to Pl.'s Resp. to M. Summ. J. (Doc. No. [30-3] at 43). As set forth above, "your work" refers to Easterbrook's work.  Therefore, the award of $58,351.00 for costs of construction work to alleviate the water problems caused by the defective grading and

excavating and $12,434.26 for costs of professional engineering expenses required to determine how to correct the deficiencies in the grading and excavation cannot be part of the amount of indemnification. However, Meritage is entitled to damages for Grange's failure to indemnify it in the amount of the remainder of the Final Award, $58,745.67.

### C. Bad Faith

Grange has moved for summary judgment as to Meritage's claims for bad faith penalties and exemplary damages.[7] O.C.G.A. § 33-4-6 authorizes statutory damages and an award of attorney's fees when, "in the event of a loss which is covered by a policy of insurance," the insurer refuses in "bad faith" to pay the covered loss "within 60 days after a demand has been made by the holder of the policy." O.C.G.A. § 33-4-6.

Bad faith is defined as "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." *Southern Gen. Ins. Co. v. Kent,* 187 Ga. App. 496, 370 S.E.2d 663, 665

---

[7] Meritage's claim for exemplary damages is separate from its bad faith claim. Compl. ¶¶ 45-51 (bad faith), ¶¶ 64-65 (exemplary damages). The only argument in Grange's Motion for Summary Judgment pertains to its liability under O.C.G.A. § 33-4-6 which governs bad faith refusal to pay an insurance claim. While the Court questions whether Meritage can bring a separate claim for "exemplary damages," this issue is not currently before the Court and will not be addressed here. *See Armstead v. Allstate Prop. & Cas. Ins. Co.*, No. 1:14-CV-586-WSD, 2014 WL 6810727, at *11 (N.D. Ga. Dec. 3, 2014) (holding that O.C.G.A. § 33–4–6 is the exclusive remedy for an insurer's bad faith refusal to pay its insured's claim, and thus punitive damages and attorney's fees are not available under any other Georgia statute) (citations omitted).

(1988). "The burden of proof is on the insured to establish bad faith." *Winningham v. Centennial Ins. Co.*, 708 F.2d 658, 659 (11th Cir. 1983); *see also Bell v. Liberty Mut. Fire Ins. Co.*, 319 Ga. App. 302, 306, 734 S.E.2d 894, 899 (2012) ("To support a cause of action under O.C.G.A. § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith."). A party can meet this burden by showing "that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." *Ga. Int'l Life Ins. Co. v. Harden*, 158 Ga. App. 450, 280 S.E.2d 863, 866 (1981). "As a matter of law, bad faith penalties and attorney fees under O.C.G.A. § 33-4-6 are not awardable if an insurer has a reasonable and probable cause for refusing to pay a claim." *Progressive Am. Ins. Co. v. Horde*, 259 Ga. App. 769, 770, 577 S.E.2d 835, 837 (2003) (citations omitted). Reasonable and probable cause for refusing to pay a claim exists where a defendant "raises a reasonable question of law or a reasonable issue of fact even though not accepted by the trial court or jury." *Winningham*, 708 F.2d at 659 (quoting *Colonial Life & Accident Insurance Co. v. McClain*, 243 Ga. 263, 264, 253 S.E.2d 745, 746 (1979)); *see also Moon v. Mercury Ins. Co. of Georgia*, 253 Ga. App. 506, 507, 559 S.E.2d 532, 534-35 (2002) ("Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.") (citation omitted); *Fireman's Fund Ins. Co. v. Dean*, 212 Ga. App. 262, 265-66, 441 S.E.2d 436, 438-39 (1994) (noting that

24

Georgia "courts have consistently held that no bad faith exists where there is a doubtful question of law involved") (citation omitted).

Meritage argues that Grange's duty to indemnify is clear. However, Grange, in denying coverage to Meritage, relied on the Georgia Court of Appeals' holding in *Auto Owners Ins. Co v. Gay Const. Co.*, 332 Ga. App. 757, 774 S.E.2d 798 (2015). While this Court ultimately concluded that the facts of this case are distinguishable from those in *Gay Construction Co.*, the question is very close. Therefore, the Court cannot conclude that Grange lacked any reasonable ground to contest the claim by Meritage. Therefore, Grange is entitled to summary judgment as to Meritage's claim for bad faith penalties.

## IV.    Conclusion

For the above-mentioned reasons, Plaintiff's Motion for Summary Judgment [Doc. No. 22] is GRANTED to the extent that the Court finds that Grange had both a duty to defend and a duty to indemnify Meritage with respect to the Underlying Litigation; Grange's Motion for Summary Judgment (Doc. No. [21]) is DENIED with respect to the duty to defend and duty to indemnify. However, Grange's Motion for Summary Judgment (Doc. No. [21]) is GRANTED with respect to the claim for bad faith penalties.

Accordingly, Meritage is entitled to (1) a declaratory judgment (Count I) as to Grange's duty to defend it in the Underlying Litigation and to indemnify it as to certain property damage; and (2) a judgment as to its breach of contract claim

(Count II) in the amount of $168,072.16.  Additionally, Grange is entitled to judgment as to the bad faith claim (Count III).  There remain pending three claims, Counts IV-VI for which neither party sought summary judgment.  Because this order does not adjudicate all the pending claims, final judgment will not be entered at this time.

This case is REFERRED to the next available magistrate judge, who shall be assigned this case in the ordinary manner. With respect to the mediation process, the parties are reminded to conduct themselves in accordance with Local Rule 16.7. Furthermore, the deadline for filing the proposed consolidated pretrial order is STAYED to give the parties time to pursue settlement. The parties are ORDERED to file, within 10 days of the mediation, a joint status report informing the court of the outcome of the mediation. If the mediation is successful the parties' status report shall provide a date by which the final settlement agreement will be executed and the dismissal filed. If the mediation is unsuccessful the stay shall be automatically lifted, and the proposed consolidated pretrial order shall be due within 30 days of the date of mediation.

SO ORDERED, this 23rd day of March, 2021.

_____
HONORABLE STEVE C. JONES
United States District Judge